Michael K. Brown (SBN 104252)
Thomas J. Yoo (SBN 175118)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071
Telephone:     213.457.8000
Facsimile:     213.457.8080
Email: mkbrown@reedsmith.com
tyoo@reedsmith.com

Steven J. Boranian (SBN 174183)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
Telephone:     415.543.8700
Facsimile:     415.391.8269
Email: sboranian@reedsmith.com

Kevin M. Hara (SBN 221604)
REED SMITH LLP
1999 Harrison St., Suite 2400
Oakland, CA  94612
Telephone:     510.763.2000
Facsimile:     510.273.8832
Email: khara@reedsmith.com

Attorneys for Defendant
Merck & Co., Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTHA TOWNSEND and HERMAN TOWNSEND,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>MERCK & COMPANY, INC., a corporation; MCKESSON CORPORATION, a corporation; AMERISOURCEBERGEN CORPORATION, a corporation; PFIZER INC.; PHARMACIA CORPORATION; G. D. SEARLE LLC, (FKA G. D. SEARLE & CO.); DOES 1 to 100; PHARMACEUTICAL DEFENDANT DOES 101 to 200; DISTRIBUTOR DEFENDANT DOES 201 to 300, inclusive,<br><br>                    Defendants. | No.<br><br>**DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)** |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLEASE TAKE NOTICE that defendant Merck & Co., Inc. ("Merck") hereby removes the state court action described below to this Court. Removal is warranted under 28 U.S.C. § 1441 because this is a diversity action over which this Court has original jurisdiction under 28 U.S.C. § 1332. Complete diversity of citizenship exists among the properly joined parties, and Modoc County is the county of origin for purposes of removal under 28 U.S.C. § 1441(a), as explained more fully below.

1.  On September 25, 2006, Plaintiffs Bertha Townsend and Herman Townsend ("Plaintiffs") commenced this action entitled *Townsend v. Merck & Co., Inc., et al.*, Case No. BC359104 ("the/this action") against Merck by filing a Complaint in connection with Judicial Counsel Coordination Proceeding ("JCCP") No. 4247, *In re Vioxx® Cases* (the "State Coordination Proceeding"). A true and correct copy of Plaintiffs' Notice of Adoption of the Master Complaint is attached hereto as Exhibit "A."

2.  By order of the judge presiding over Judicial Counsel Coordination Proceeding No. 4247, *In re Vioxx Cases*, Superior Court Judge Victoria Chaney, each plaintiff commencing a Vioxx-related civil action must designate a "county of origin," which Judge Chaney has ordered shall be the controlling venue for removal purposes. The Court's order reads:

> (1) As the initial pleading, each individual plaintiff shall file either (1) short form Complaint titled "Complaint: Amended Notice of Adoption of Master Complaint . . ." or (2) a separate complaint. . . .
>
> (2) A plaintiff filing a separate complaint as the initial pleading shall state clearly on the caption page of the complaint, in bold print, the following information: (1) "VIOXX," and (2) "County of Origin:" [plaintiff's county of residence or the county where the alleged injury occurred]. . . . .
>
> . . . .
>
> **For purposes of removal, remand and trial venue, the designated county of origin specified in the initial pleading shall be deemed, and is stipulated to be, the original county in which [each] case was initially filed and pending.**

*In re Vioxx Cases*, JCCP 4247, Case Management Order No. 6: Direct Filing and Adoption of Master Complaint, entered September 29, 2005 (emphasis added) (A true and correct copy is attached hereto as Exhibit "C").

3. By Judge Chaney's order, plaintiffs' county of origin is <u>Modoc County</u> because his Complaint states that <u>Modoc County</u> is the county of origin for plaintiffs' allegations. Therefore, <u>Modoc County</u> is deemed the county in which this action is pending for purposes of removal under 28 U.S.C. § 1441(a).  See Exh. "A" at ¶ 2.

4. On December 5, 2006, Merck filed an Answer to the Complaint. A true and correct copy of the Answer filed in this action is attached hereto as Exhibit "B".

5. No further proceedings have been had in this action.

6. This action involves allegations regarding the prescription drug Vioxx. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring 148 Vioxx-related cases to the United States District Court for the Eastern District of Louisiana for coordinated pretrial proceedings under 28 U.S.C. § 1407. Merck intends to seek the transfer of this action to that Multidistrict Litigation ("MDL"), *In re VIOXX Products Liability Litigation*, MDL No. 1657, and shortly will provide the JPML with notice of this action pursuant to the procedure for "tag along" actions set forth in the rules of the JPML.

7. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

# I. MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

8.  Merck was served with the Complaint on December 1, 2006.  Merck is informed and believes that defendant McKesson Corporation was served on November 22, 2006.  Merck is informed and believes that no other has been served.  This Notice is therefore timely under 28 U.S.C. § 1446(b).  A true and correct copy of the Complaint in the action is attached hereto as Exhibit "A."

9.  Venue is proper in this Court because it is the "district and division embracing the place where such action is pending," pursuant to the September 29, 2005 order of Coordination Trial Judge Chaney.  See, 28 U.S.C. § 1441(a).  On September 29, 2005, Judge Chaney ordered that, for the sake of fair and efficient coordinated proceedings, plaintiffs would be allowed to commence Vioxx-related actions directly in the State Coordination Proceeding by filing (1) a short-form complaint (called a Notice of Adoption of Master Complaint) or (2) a full complaint in Los Angeles County Superior Court.  This direct filing procedure is intended to speed the transfer of Vioxx-related cases to the State Coordination Proceeding and to avoid the time and expense associated with filing actions in other counties, only to then transfer them to Los Angeles.[1]

10.  To ensure, however, that this procedural convenience would not affect the parties' rights, including rights involving removal jurisdiction and trial venue, Judge Chaney ordered that each plaintiff designate a "county of origin."  In connection with this designation, Judge Chaney ordered and the parties stipulated as follows:  "For purposes of removal, remand, and trial venue, the designated county of origin specified in the initial pleading shall be deemed, and is stipulated to be, the original county in which [each] case was initially filed."  See Exhibit "C".

---

[1] The Plaintiffs' Steering Committee in the State Coordination Proceeding requested the direct filing procedure.

11.     Judge Chaney's order defines the County of Origin as "plaintiff's county of residence or the county where the alleged injury occurred." Exh. C, ¶ 2(a)(2). Plaintiffs allege <u>Modoc County</u> as the County of Origin and because plaintiff further allege that they reside in <u>Modoc County</u>, and their injuries occurred in that county, this action's county of origin is <u>Modoc County</u>, which this district and division embraces. Exh. A, ¶ 2. ("Plaintiffs are residents of the State of California, County of <u>Modoc</u>. Plaintiff's injuries as alleged in this litigation occurred in the County of <u>Modoc</u> in the State of California.")

12.     Under 28 U.S.C. § 1441(a), an action "may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." However, this geographical provision is a procedural matter that does not affect subject matter jurisdiction. *See* William W. Schwarzer et al., *Cal. Prac. Guide Fed. Civ. Pro. Before Trial* ¶ 2:997 (geographic component of the removal statute is in the nature of a venue provision; it is procedural and subject to waiver); *see also Peterson v. BMI Refractories*, 124 F.3d 1386, 1394 (11th Cir. 1997) (failure to comply with the geographic requirements of § 1441(a) was a procedural matter that did not deprive a district court of subject matter jurisdiction in a removed case); *Archuleta v. Lacuesta*, 131 F.3d 1359, 1365 (10th Cir. 1997) (stating that a removal to a district court other than the court for the district embracing the place where the action is pending cannot deprive a district court of subject matter jurisdiction; the removal statutes, including section 1441(a), do not set forth principles of subject matter jurisdiction but are solely procedural in nature). This action is currently pending in the Los Angeles County Superior Court. But because Plaintiffs allege <u>Modoc County</u> as the county of residence and where their injuries occurred, this district court is the proper venue for this action, pursuant to Judge Chaney's order.

13.     All of the properly joined and served defendants consent to this removal.[2]

---

[2] See Pfizer, Pharmacia, and G.D. Searle's Joinder to Notice of Removal filed concurrently here with. The Complaint purports to name McKesson Corp. and Amerisource Bergen Corp. as codefendants. But because they are fraudulently

14. No previous request has been made for the relief requested herein.

15. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff and a copy is being filed with the Clerk of the Court of the State of California, County of Los Angeles.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A. The Amount In Controversy Requirement Is Satisfied

17. It is apparent from the face of the Complaint that Plaintiffs seek recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiffs allege injuries as a result of ingestion of Vioxx. (Complaint at ¶ 4). Plaintiffs seek general damages, special damages, loss of earnings and impaired earning capacity, medical expenses, past and future, past and future loss of consortium, disgorgement of profits, and punitive or exemplary damages. (Complaint ¶ 6).

18. Federal courts around the country have ruled that federal diversity jurisdiction exists in similar actions alleging personal injuries caused by Vioxx. *See, e.g., Morgan v. Merck & Co., Inc.*, No. 3:03cv435WS (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co., Inc.*, No. L-03-134 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co., Inc.*, Civ. No. H-02-3139 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.*, No. 02-C-4203 (N.D. Ill. August 30, 2002); *Abrusley v. Merck*

---

joined to this lawsuit, their consent to this removal is not required. *See* 28 U.S.C. § 1441(b); *see Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (co-defendants who are fraudulently joined need not join in a removal).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*& Co., Inc.*, No. 02-0196 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186 (D. Haw. June 5, 2002).  These courts were all presented with complaints seeking actual damages for injuries allegedly caused by Vioxx and all found, either explicitly or implicitly, that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

**B.     There Is Complete Diversity Of Citizenship**

19.    There is complete diversity as between Plaintiffs and the sole properly joined defendants, Merck.

20.    Merck is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).  Merck is informed and believes that defendants Pfizer, Pharmacia, and G.D. Searle are citizens of states other than California.

21.    Plaintiffs' complaint alleges that Plaintiffs are citizens of the State of California, and a resident of the County of Modoc.  (Complaint ¶ 3,7).  Based on this allegation, Merck is informed and believes that Plaintiffs are citizens of the State of California.

22.    Defendant Does 1-300 have been sued under fictitious names.  For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a).

23.    For the reasons set forth below, the remaining named defendants—McKesson Corporation (hereinafter "McKesson") and Amerisource Bergen Corporation (hereinafter "Amerisource") – are fraudulently joined.  Therefore, their citizenship must be ignored for the purpose of determining the propriety of removal.  *See McCabe v. General Foods*, 811 F.2d 1336,

1339 (9th Cir. 1987).  A defendant is fraudulently joined and the defendant's presence in the lawsuit is ignored for purposes of determining diversity where no viable cause of action has been stated against the resident defendant.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998); *TPS Utilicom Services Inc.*, 223 F. Supp. 2d at 1100.

### III.     THE CITIZENSHIP OF MCKESSON AND AMERISOURCE MUST BE IGNORED BECAUSE THEY ARE FRAUDULENTLY JOINED AS THE COMPLAINT STATES NEITHER A FACTUAL NOR LEGAL BASIS FOR A CLAIM AGAINST THEM

A defendant is fraudulently joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state."  *Morris*, 236 F.3d at 1067 (citations omitted).  *Accord United Computer Sys.*, 298 F.3d at 761; *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, ("In re PPA"), MDL No. 1407, Docket No. C02-423R, Slip. Op. at 3 (W.D. Wash. Nov. 27, 2002) (a true and correct copy is attached hereto as Exhibit "D") (denying plaintiffs' motion to remand after finding resident retailer fraudulently joined).  The fraudulent joinder of McKesson and Amerisource is obvious under well-settled state law because (1) plaintiffs have failed to allege any factual basis for the claims asserted against McKesson or Amerisource and (2) there is no legal basis for the claims plaintiffs seek to bring against McKesson and Amerisource as pleaded.

25.     McKesson and Amerisource are fraudulently joined because plaintiffs have failed to make any material allegations against them.  *See, e.g.*, *Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137, (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material allegations against [the in-state defendants] are made"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

26.     The crux of the Complaint is an alleged failure to adequately warn of alleged side effects associated with the use of Vioxx, yet notably absent are any specific allegations that McKesson and Amerisource made any specific representations or warranties to plaintiff or plaintiff's prescribing physician, or that plaintiff or plaintiff's prescribing physicians relied on any such specific representations or warranties by McKesson and/or Amerisource.  Accordingly, plaintiffs have failed to meet the minimal pleading requirements to state a claim against McKesson.  *See, e.g.*, *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555, 558 (9th Cir. 1995) (dismissing breach of express warranty claim against distributor due to plaintiffs' failure to identify any statements made by the distributor that were inconsistent with or went beyond either the product labels or the Product Guide provided by manufacturer).  *See also Cox v. Depuy Motech, Inc.*, 2000 WL 1160486, at *5 (S.D. Cal. 2000) (causation is an essential element of strict liability and negligence claims); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985) (actual reliance is an element of implied warranty claim); *B.L.M. v. Sabo & Deitsch*, 55 Cal.App.4th 823, 834 (1997) (to state a claim of negligent misrepresentation, plaintiff must at least identify the alleged misrepresentation).

27.     Plaintiffs cannot cure this deficiency by simply relying on allegations directed toward "defendants."  *See In re PPA*, MDL No. 1407, Slip Op. at 5 (Exh. "D" hereto) (allegations directed toward "defendants" or "all defendants" insufficient).

28.     The general allegation that Defendants knew of the alleged risks associated with the use of Vioxx are particularly deficient because the wholly conclusory claims are undermined and contradicted by the more specific allegations of Merck's concealment and misrepresentation of the same information.  *See, e.g.*, *In re PPA*, MDL 1407, Slip. Op. at 7 (Exh. "D" hereto) (allegations that "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines and contradicts the idea that [the resident retail defendant] had knowledge or reason to know of alleged defects.").  The allegations of Merck's purported concealment and misrepresentation of the alleged risks of Vioxx belie any inference that McKesson and Amerisource, wholesale distributors, had knowledge of that which was allegedly concealed.

29. Even if plaintiffs had directed allegations at McKesson and Amerisource, there remains no legal basis for the causes of action asserted against McKesson and Amerisource because plaintiffs' claims are based on an alleged failure to warn and premised – for McKesson and Amerisource– on a non-existent duty to warn. Under California law, McKesson and Amerisource bear no duty to warn based on the "learned intermediary" doctrine. The "learned intermediary" doctrine, the foundation of prescription drug product liability law, provides that the duty to warn about a drug's risks runs from the manufacturer to the physician (the "learned intermediary"), and then from the physician to the patient. *See Brown v. Superior Court*, 44 Cal. 3d 1049, 1061-1062, n.9 (1988); *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996). It is the physician, and only the physician, who is charged with prescribing the appropriate drug and communicating the relevant risks to the patient. *See Brown*, 44 Cal.3d at 1061-62.

30. The rationale of the "learned intermediary" doctrine is that it is the physician that is in the best position to determine whether a patient should take a prescription drug and that imposing a duty on others to warn patients would threaten to undermine reliance on the physician's informed judgment. For this reason, courts have rejected imposing liability on distributors like McKesson and Amerisource or failure to warn of the risk of a prescribed drug. *See, e.g.*, *Barlow v. Warner-Lambert Co.*, Case No. CV 03 1647 R (RZx), slip op. at 2 (C.D. Cal. April 28, 2003) (a true and correct copy is attached hereto as Exhibit "E") ("The Court finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication [Rezulin] to pharmacists in California;" motion to remand denied); *Skinner v. Warner-Lambert Co.*, Case No. CV 03 1643-R(RZx), slip op. at 2 (C.D. Cal. April 28, 2003) (a true and correct copy is attached hereto as Exhibit "F") (same); *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 680-81 (1985) (under the learned intermediary doctrine, retail pharmacies can have no general duty to warn consumers of effects of prescription drugs); *In re Baycol Prods. Litig.*, MDL No. 1431, Case No. 02-139, slip op. at 3-4 (D. Minn. May 24, 2002) (a true and correct copy is attached hereto as Exhibit "G") (retail distributor of prescription drugs fraudulently joined); *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P.3d 922, 929 (Utah 2003) (a true and correct copy is attached hereto as Exhibit "H") (declining to extend duty to warn to retail distributor of prescription

diet drug as long as [their] "ability to distribute prescription drugs is limited by the highly restricted FDA-regulated drug distribution system in this country . . .").

31.     Moreover, it is undisputed that through a collaborative process, Merck and the FDA prepared the information to be included with the prescription drug, Vioxx, with the FDA having final approval of the information that could be presented.  Once the FDA has determined the form and content of the information, it is a violation of federal law to augment the information. *See* 21 U.S.C. § 331(k) (prohibiting drug manufacturers and distributors from causing the "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling" of an FDA-approved drug held for sale); *Brown v. Superior Court,* 44 Cal. 3d 1049, 1069 n.12. (1988) (The FDA regulates the testing, manufacturing, and marketing of drugs, including the content of their warning labels.)  Thus, McKesson and Amerisource could not change the information they were given by Merck as approved by the FDA without violating federal law.  No duty can be found where it requires a party to violate the law to fulfill it.

WHEREFORE, Defendant Merck respectfully removes this action from the Superior Court of the State of California for the County of Los Angeles, Case Number BC359104 this Court pursuant to 28 U.S.C. § 1441.

DATED: December 8, 2006.

REED SMITH LLP


By    /s/ Kevin M. Hara
      Kevin M. Hara
      Attorneys for Defendant
      Merck & Co., Inc.